# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERTO MONTALVO**, | : | **CIVIL NO. 1:17-CV-179** |
| **Petitioner** | : | **(Chief Judge Conner)** |
| v. | : | |
| **JACK SOMMERS**, *et al.*, | : | |
| **Respondents** | : | |

## **MEMORANDUM**

On February 10, 2012, petitioner Roberto Montalvo ("Montalvo"), was convicted of two counts of sexual assault, possession with intent to deliver cocaine, conspiracy to possess cocaine with intent to deliver, indecent assault, conspiracy to possess cocaine, conspiracy to possess marijuana, possession of cocaine, possession of marijuana, possession of drug paraphernalia, and furnishing alcohol to a minor, in the Court of Common Pleas of Lebanon County, Pennsylvania. (Doc. 1 at 1; Doc. 17-4, Verdict Slip). On May 2, 2012, he was sentenced to an aggregate sentence of ten years, three months to thirty-two years' incarceration. (Doc. 1 at 1; Doc. 17-5, Sentencing Order).

On January 27, 2017, Montalvo filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his underlying conviction sentence. (Doc. 1). For the reasons set forth below, the court will deny the petition as untimely.

I.  **State Court Proceedings**[1]

The facts underlying Montalvo's convictions are summarized as follows:

> On June 20, 2011, [Montalvo] provided beer and cocaine to seventeen year-old A.T. After A.T. became intoxicated, [Montalvo] engaged in acts of oral and anal sex with him. A.T. testified that he never consented to these acts.
>
> After A.T. returned to his own home, his mother saw that her son was crying and visibly upset. Accordingly, A.T. was taken to the Lebanon Good Samaritan Hospital. He was examined by SAFE Nurse Vanessa Smith. Nurse Smith observed lacerations and abrasions on A.T.'s anus. She also performed a rape kit examination and received a statement from A.T. Nurse Smith described A.T. as "very tired" and "distraught" during the entire examination.
>
> The rape kit evidence collected by Nurse Smith was transported to the Pennsylvania State Police Crime Laboratory. The parties stipulated that State Police Forensic Scientist Jennifer Badger examined the rape kit evidence. Forensic Scientist Badger determined that spermatozoa was located on A.T.'s underwear and inside his rectum. This spermatozoa was prepared for DNA analysis. Forensic DNA Scientist Timothy Gavel of the Pennsylvania State Police performed a DNA analysis on the spermatozoa that had been collected by Ms. Badger. The DNA profile from the spermatozoa reflected a mixture of DNA "made up of [A.T.] and Roberto Montalvo." The stipulation further set forth that the probability of randomly selecting an unrelated individual other than [Montalvo] who possessed the DNA type he examined was "approximately 1 in 61 quintillion from the Caucasian population; approximately 1 in 3.3 sextillion from the African American population and 1 in 27 quintillion from the Hispanic population."
>
> Officers with the Lebanon City Police Department were called to the Good Samaritan Hospital in order to interview A.T. As a result of the interview of A.T., police obtained a search warrant for [Montalvo's]

---

[1] A federal habeas court may take judicial notice of state court records. Montanez v. Walsh, 2014 WL 47729, at *4 n.2 (M.D. Pa. Jan. 7, 2014); see also Reynolds v. Ellingsworth, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the court takes judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Lebanon County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania.

> home. The purpose of the search warrant was to look for evidence related to the sexual assault described by A.T.
>
> The search warrant was effectuated by Detective Keith Ulrich and Detective Jonathan Hess on June 21, 2011. The officers testified they had difficulty making entrance into the apartment. When police did finally enter the premises, they came into contact with [Montalvo] and an individual by the name of Miguel Lopez. During the search that ensued, police located what appeared to be cocaine, crack-cocaine, marijuana, and drug paraphernalia. The bulk of the drugs were found hidden in the ceiling of the apartment. In addition, small street delivery-size baggies were found in the apartment, as was a digital scale of the type often used to measure small amounts of controlled substances.

Commonwealth v. Montalvo, 2013 WL 11264311, *1 (Pa. Super. 2013).

A jury trial was held on February 9 and 10, 2012. (Doc. 17-3, Transcript of Jury Trial). At the conclusion of the trial, Montalvo was convicted of two counts of sexual assault, possession with intent to deliver cocaine, conspiracy to possess cocaine with intent to deliver, indecent assault, conspiracy to possess cocaine, conspiracy to possess marijuana, possession of cocaine, possession of marijuana, possession of drug paraphernalia, and furnishing alcohol to a minor. (Doc. 17-4, Verdict Slip). On May 2, 2012, he was sentenced to an aggregate term of incarceration of ten years, three months to thirty-two years. (Doc. 17-5, Sentencing Order).

On November 9, 2012, Montalvo filed a notice of appeal with the Pennsylvania Superior Court. Commonwealth v. Montalvo, 2014 MDA 2012 (Pa. Super.). On June 21, 2013, the Pennsylvania Superior Court affirmed the judgment of sentence. Id. Montalvo did not file a petition for allowance of appeal to the Pennsylvania Supreme Court.

On April 10, 2014, Montalvo filed a petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (Doc. 17-15, PCRA Petition). On August 28, 2014, the Common Pleas Court denied the PCRA petition. (Doc. 17-7, Transcript of PCRA Hearing). On September 29, 2014, Montalvo filed a notice of appeal in the Pennsylvania Superior Court. Commonwealth v. Montalvo, 1652 MDA 2014 (Pa. Super.). On September 9, 2015, the Pennsylvania Superior Court affirmed the denial of the PCRA petition. Id.; Commonwealth v. Montalvo, 2015 WL 6550763 (Pa. Super 2015). On October 14, 2015, Montalvo filed a petition for allowance of appeal with the Pennsylvania Supreme Court. Commonwealth v. Montalvo, 772 MAL 2015 (Pa.). On April 12, 2016, the Pennsylvania Supreme Court denied the petition for allowance of appeal. Id.

On September 6, 2016, Montalvo filed a second PCRA petition alleging that appellate counsel was ineffective for failing to notify him of the Pennsylvania Supreme Court's April 12, 2016 order. (Doc. 17-23, PCRA Petition). On December 19, 2016, the Common Pleas Court found that appellate counsel was ineffective for failing to notify Montalvo of the Pennsylvania Supreme Court's April 12, 2016 decision. (Doc. 17-24, PCRA Court Order). The state court noted that Montalvo wrote directly to the Pennsylvania Supreme Court regarding his appeal, and the Pennsylvania Supreme Court notified Montalvo on August 16, 2016 that his appeal was denied. (Id.) The Common Pleas Court ultimately found that, to the extent Montalvo sought to substantively challenge his underlying conviction, the PCRA petition was untimely, and was denied as such. (Id.)

4

Montalvo filed the instant federal habeas petition on January 27, 2017. (Doc. 1).

**II.    Discussion**

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). See 28 U.S.C. § 2244(d)(1). Specifically, a state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); see Jones v. Morton, 195 F.3d 153, 157 (3d Cir. 1999). Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. See Nara v. Frank, 264 F.3d 310, 314 (3d Cir. 2001).

5

Montalvo was sentenced on May 2, 2012. (Doc. 17-5, Sentencing Order). His judgment of sentence became final on July 22, 2013, at the expiration of the thirty-day period to seek review with the Pennsylvania Supreme Court. See PA. R. APP. P. 1113(a) (petition for allowance of appeal shall be filed within thirty days from the entry of the order of the Superior Court sought to be reviewed); see also 28 U.S.C. § 2244(d)(1)(A); Swartz v. Meyers, 204 F.3d 417, 424 (3d Cir. 2000) ("[T]he period of limitation tolls during the time a prisoner has to seek review of the Pennsylvania Superior Court's decision[,] whether or not review is actually sought."). The one-year period for the statute of limitations commenced running as of that date. Hence, the federal petition, which was filed on January 27, 2017, is clearly untimely. However, the court's analysis does not end here; consideration of both statutory and equitable tolling must be undertaken.

### A.     Statutory Tolling

Section 2244(d)(2) tolls the one-year statute of limitations with respect to the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations began running on July 22, 2013 and, absent any tolling, would expire on July 22, 2014. On April 10, 2014, after approximately 262 days of the one-year statute had elapsed, Montalvo successfully tolled the statute of limitations when he filed his timely PCRA petition. See 28 U.S.C. § 2244(d)(2). The statute remained tolled until April 12, 2016, when the Pennsylvania Supreme Court denied his petition for allowance of appeal. However, as stated *supra*, the common pleas court subsequently determined that appellate

counsel was ineffective for failing to promptly advise Montalvo of the Pennsylvania Supreme Court's April 12, 2016 decision. (Doc. 17-24, PCRA Court Order). The state court determined that Montalvo received notice of the denial of his appeal directly from the Pennsylvania Supreme Court on August 16, 2016. (Id.) Consequently, the court finds that the statute of limitations was tolled between April 12, 2016 and August 16, 2016 but that it began running again on August 16, 2016. As of August 16, 2016, Montalvo had 103 days remaining in which to file his federal petition. This period expired on November 28, 2016. Montalvo's federal petition was filed on January 27, 2017, well after the expiration of the limitations period.

Montalvo's second PCRA petition did not statutorily toll the AEDPA's limitations period under § 2244(d)(2) because the state court held that it was untimely under the PCRA statute of limitations. (Doc. 17-24, PCRA Court Order). An untimely PCRA petition is not "properly filed" and, therefore, does not toll the statute of limitations. See Pace v. Diuglielmo, 544 U.S. 408, 417 (2005) (holding that "[b]ecause the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and [petitioner] is not entitled to statutory tolling under § 2254(d)(2)"); see also Merritt v. Blaine, 326 F.3d 157, 167-68 (3d Cir. 2003). Hence, Montalvo's second, untimely PCRA petition fails to provide any statutory tolling of the AEDPA's statute of limitations.

Montalvo must establish that he is entitled to sufficient equitable tolling of the AEDPA's limitations period in order for his habeas petition to be considered timely filed.

7

## B. Equitable Tolling

Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. See Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006); LaCava v. Kyler, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. See Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003). Generally, a litigant seeking equitable tolling must establish the following two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418.

With respect to the diligent pursuit of rights, petitioner must demonstrate that he or she exercised reasonable diligence in investigating and bringing the claims. See Robinson v. Johnson, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. See LaCava, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim. See Jones, 195 F.3d at 159; Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).

Montalvo presents no evidence to account for the delay in seeking relief in federal court. (See Docs. 1, 19). Nor does he indicate that extraordinary circumstances obstructed his pursuit of post-conviction relief. It is therefore quite clear that equitable tolling of the AEDPA statute of limitations is not warranted in this case.

## III.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether

the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, a COA will not issue.

IV. **Conclusion**

For the reasons set forth above, the petition for writ of habeas corpus will be denied as untimely.

An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: April 11, 2019